1

2

3

4

5

6

7

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11   CURTIS HARRIS,                    Case No.:  CV-15-1794-GPC (PCL)

12                        Plaintiff,   **REPORT AND**
                                       **RECOMMENDATION RE:**
13   v.                                **PETITION FOR WRIT OF HABEAS**
                                       **CORPUS**
14   KELLY SANTORO, Warden,

15                        Defendant.

16

17              **I.    INTRODUCTION**

18          A jury convicted Petitioner Curtis Harris ("Petitioner") of assault by means likely

19   to cause great bodily injury, Cal. Penal Code § 245(a)(1), and battery with serious bodily

20   injury, Cal. Penal Code § 243(d), and found true an allegation that Petitioner inflicted

21   great bodily injury, Cal. Penal Code §12022.7(a). (Lodgment 1, at 124-25.) Challenging

22   his conviction, Petitioner seeks federal habeas corpus relief on the basis of seven

23   grounds: 1) Petitioner's trial counsel was ineffective for various reasons; 2) the

24   prosecutor committed a pattern of misconduct; 3) the trial court improperly denied

25   Petitioner's motion to suppress evidence under California Penal Code section 1538.5; 4)

26   the trial court improperly applied the standard for substitution of appointed counsel; 5)

27   the trial court improperly answered a jury question and Petitioner's trial counsel was

28   ineffective for failing to challenge the trial court's answer; 6) the trial court erred in

1  denying Petitioner's motion for new trial; and 7) Petitioner's appellate counsel rendered

2  ineffective assistance of counsel for failing to raise issues on appeal. (Doc. 1, at 31-71.)

3      Respondent filed an answer to the petition, arguing for its denial. (Doc. 13.)

4  Petitioner did not file a traverse. For the reasons set forth below, the Court recommends

5  that the petition be denied.

## II.    PROCEDURAL BACKGROUND

7      On April 7, 2011, a San Diego jury found Petitioner guilty of assault by means

8  likely to cause great bodily injury, Cal. Penal Code § 245(a)(1), and battery with serious

9  bodily injury, Cal. Penal Code § 243(d). (Lodgment 1, at 124-25.) Petitioner admitted

10  two prior-conviction allegations, Cal. Penal Code §§667(a)(1), 667(b)-(i), 1170.12.

11  (Lodgment 1, at 369.) After the jury verdict, the trial court sentenced Petitioner to

12  fourteen years in state prison. (Lodgment 1, at 393.)

13      Petitioner appealed his conviction on the ground that he received ineffective

14  assistance of counsel when his attorney failed to advocate for the the jury instruction that

15  emotional trauma does not constitute "serious bodily injury" in response to a jury note.

16  (Lodgment 5.) Additionally, he contended that the trial court violated its instructional

17  duty under Cal. Penal Code §1138 and his due process rights by failing to provide a

18  proper response to the jury's question regarding whether psychological harm could

19  constitute serious bodily injury. (Id.) On January 16, 2014, the California Court of

20  Appeal affirmed his conviction. (Lodgment 5.) Petitioner then filed a petition for review

21  in the California Supreme Court, and on March 26, 2014, the California Supreme Court

22  denied the petition for review. (Lodgment 7.)

23      On March 5, 2015, Petitioner filed a petition for writ of habeas corpus in the

24  California Supreme Court. (Lodgment 8.) On July 8, 2015, the California Supreme Court

25  denied the habeas petition. (Lodgment 9.)

26      On August 13, 2015, Petitioner filed a petition for writ of habeas corpus in this

27  Court. (Doc. 1.)  Respondent filed an answer on December 21, 2015, addressing the

28  seven claims that were raised in the petition for writ of habeas corpus. (Doc. 13.)

Petitioner did not file a traverse. For the reasons discussed below, the Petition should be DENIED.

### III.  FACTUAL BACKGROUND

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence. 28 U.S.C. §2254(e)(1); see also Summer v. Mata, 449 U.S. 539, 550 (1981) (holding in part: findings of historical fact, including inferences properly drawn from these facts, are entitled to statutory presumption of correctness.) The following facts are taken from the California Court of Appeal opinion:

> While at a party, Harris punched Jodi Tannehill in the face, causing her to fall to the floor. While Tannehill was unconscious on the floor, Harris poured beer on her, unzipped his pants and urinated on her. The emergency doctor who treated Tannehill after the attack testified that she suffered a hematoma (bleeding under the skin) on her forehead and an abrasion and bruising on the front of her head. He diagnosed her with a closed-head injury, an abrasion, and possible "GHB" poisoning. The doctor explained that a "close-head injury" is commonly referred to as a "concussion."

> Tannehill testified that her injuries remained black, blue and painful for several weeks. As a result, she could not bite or chew and ate only soft foods. The bump on her head lasted for three to five months, and she had to have blood drained from her head twice after the attack. She suffered daily headaches for several months. Because of her headaches and the treatment, she had to take time off from school. She also suffered panic attacks that affected her ability to work as a hairdresser.

> During deliberations, the jury sent a note requesting a "clearer definition of 'battery causing serious bodily injury.' Does that include emotional suffering, such as inability to perform job duties due to the emotional trauma caused by an injury?" Upon stipulation of the parties, the court responded, "The definition of 'serious bodily injury' is contained in Instruction 925, the final paragraph." The relevant portion of CALCRIM No. 925 instructed the jury: "A serious bodily injury means a serious impairment of physical condition. Such an injury may include, but is not limited to: . . .  loss of consciousness/concussion/bone fracture/protracted loss or impairment of function of any bodily member or organ." Twenty minutes later, the jury found Harris guilty.

> (Lodgment 5.)

# IV.   DISCUSSION

A. <u>Standard of Review</u>

A federal court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of state court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Federal habeas courts may not "reexamine state-court determinations on state-law questions." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991). "[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." <u>Bradshaw v. Richey</u>, 546 U.S. 74, 76 (2005); <u>see</u> <u>Park v. California</u>, 202 F.3d 1146, 1149-50 (9th Cir. 2000) ("a violation of state law standing alone is not cognizable in federal court on habeas").

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997). Under ADEPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: 1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law; or 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. §2254(d); <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinary deferential review, inquiring only whether the state court's decision was objectively unreasonable. <u>See</u> <u>Yarborough v. Gentry</u>, 540 U.S. 1, 4 (2003); <u>Medina v. Hornung</u>, 386 F.3d 872, 877(9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. <u>See</u> <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002). The court may grant

relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. Id. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." See Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. See Y1st v. Nunnemaker, 501 U.S. 797, 805-06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court Law. See Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000)(overruled on other grounds by Andrade, 538 U.S. at 75-76); accord Hines v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003). However, a state court need not cite Supreme Court precedent when resolving a habeas corpus claim. See Early, 537 U.S. at 8. "[S]o long as neither the reasoning nor the result of the state-court decision contradicts [Supreme Court precedent,]" id., the state court decision will not be "contrary to" clearly established federal law. Id. Clearly established federal law, for purposes of §2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." Andrade, 538 U.S. at 72.

Where the state court did not reach the merits of a claim because of the imposition of a state procedural bar, "there is no state court decision. . . . to which to accord deference." Pirtle, 313 F.3d at 1167. Thus, this court must review those claims de novo. Id. However, AEDPA "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 562 U.S 86, 100 (2011). "Rather, as [the Supreme Court] has explained, '[w]hen a federal claim

has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.'" Johnson v. Williams,  U.S. U, 133 S. Ct. 1088, 1094 (2013) (quoting Richter, 131 S. Ct. at 785).

B. Analysis

1.    Claim 1: Petitioner was Deprived of his Sixth Amendment Rights Because Trial Counsel Rendered Ineffective Assistance.

Petitioner argues that trial counsel was unconstitutionally ineffective. (Doc.1, at 32.) Petitioner presents five instances in which his trial counsel was ineffective: 1) failing to adequately prepare for trial; 2) failing to call alibi witnesses; 3) failing to object to several violations under Brady v. Maryland, 373 U.S. 83 (1963); 4) failing to retain a DNA expert and retest DNA evidence; and 5) essentially admitting Petitioner's guilt in closing arguments.  Petitioner raised this claim in state court, and the claim was summarily denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

In order to establish an ineffective assistance of counsel claim, a petitioner must show: 1) that the counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the petitioner by the Sixth Amendment; and 2) such errors were prejudicial to Petitioner. Stickland v. Washington, 466 U.S. 668, 687 (1984). Even further, a petitioner must demonstrate that errors made by counsel are such that fall below an objective standard of reasonableness. Id. A petitioner must overcome the presumption that, under all the circumstances of the case, the challenged action "might be considered sound trial strategy." Id. at 689. Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable. Wiggins v. Smith, 539 U.S. 510, 521 (2003) (quoting Strickland, 466 U.S. at 690-91). Lawyers are allowed considerable discretion to make strategic decisions about what to investigate, but only after those lawyers "gathered sufficient evidence upon which they base their tactical choices." Duncan v. Ornoski, 528 F.3d 1222, 1235 (9th Cir. 2008)(quoting Jennings v. Woodford, 290 F. 3d 1006, 1014 (9th Cir. 2002)(emphasis omitted)). Under part two of

6

the <u>Strickland</u> test, even if a petitioner shows that particular errors of counsel were unreasonable, they must also demonstrate that the result of the proceeding would have been different had the errors not occurred. <u>Id.</u> at 693-94. A failure by a petitioner to illustrate both the deficient performance and sufficient prejudice results in a denial of a claim of ineffective assistance of counsel. <u>Id.</u> at 700.

      a.  <u>Sub-Claim a: Trial Counsel Failed to Adequately Prepare for Trial.</u>

Petitioner argues that trial counsel was not prepared for trial. (Doc. 1, at 32.) Petitioner claims that trial counsel did not do sufficient research into his background and into the context of the facts in the case. (Doc. 1, at 34.) Petitioner maintains that trial counsel was unprepared to present mitigating material evidence at the sentencing hearing, which was prejudicial to his case. (<u>Id.</u>)

Petitioner's claim fails the <u>Strickland</u> standard. In his Petition, Petitioner failed to show support for counsel's alleged deficient performance and failed to show how this lack of preparation prejudiced him at trial. The Court of Appeal stated that although trial counsel participated in various other trials while preparing for his case, trial counsel was adequately prepared for Petitioner's trial. (Lodgment 2, at 1533.) The Court of Appeal also stated that trial counsel was well prepared and exhibited extensive knowledge of the facts of the case: "I don't have any question about the preparation of Ms. Von Helms and Mr. Valencia as far as this case and for purposes of trying the case." (Lodgment 2, at 1534.) Because Petitioner failed to prove both deficient performance and sufficient prejudice due to inadequate preparation, the state court's decision that trial counsel was adequately prepared for trial is reasonable and must be upheld. The Court finds that habeas relief is not available with respect to claim one, sub-claim a.

      b.  <u>Sub-Claim b: Trial Counsel Failed to Call Witnesses that Petitioner Requested.</u>

Petitioner maintains that his trial counsel failed to call three alibi witness: Joyce Jones, Michelle Gothard, and Robert Whaley. (Lodgment 1, at 289; Lodgment 2, at 1991-93.) Additionally, Petitioner claims that he was unfairly influenced to refrain from

testifying. (Doc. 1, at 40-41.) Petitioner raised this claim to the state courts in his writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

Here, Petitioner failed to overcome the presumption that not calling Joyce Jones, Michelle Gothard, and Robert Whaley as alibi witnesses was a reasonable tactical decision. Joyce Jones would have testified that shortly after 2:30 a.m. on the date of the incident, Petitioner arrived at her niece's house and remained there until 4:30 or 5:00 a.m. (Lodgment 1, at 286.) Petitioner provided an interview report of Michelle Gothard, where Gothard claimed that she picked up Petitioner around 2:30 a.m. from military housing and drove him home. (Lodgment 1, at 289.)  Trial counsel interviewed all three of the alibi witnesses before the tactical decision was made not to call them in compliance with Duncan, 528 F.3d at 1235. (Lodgment 2, at 1287,1305.) "[I]n the reporter's transcript of April 6th of last year, 2011. . . Ms. Von Helms indicated to the court the fact that these potential alibi witnesses had been gone over and discussed in particular, Mr. Harris . . . I think that's certainly an important indication that this was a tactical decision made with the defendant's consent that we rarely have a record of." (Lodgment 2, at 1534:26-1535:7.) The court also stated that the proposed testimony that was not presented as alibi evidence would have the effect of supporting the prosecution and prejudicing Petitioner. (Lodgment 2, at 1534.) Additionally, Petitioner failed to provide factual support that he was coerced into refraining from testifying on his own behalf. On the record, Petitioner never indicated that he wanted to testify or that he was prevented from doing so by counsel. Lastly, Petitioner did not establish how these alleged errors of trial counsel prejudiced his case. Therefore, the state court was not unreasonable in ruling that trial counsel was not ineffective for failing to call witnesses, including Defendant, to the stand. The Court finds that habeas relief is not available with respect to claim one, sub-claim b.

///

///

    c.   <u>Sub-Claim c: Trial Counsel Failed to Object to Several Violations Under</u> <u>*Brady v. Maryland*.</u>

      Petitioner argues that trial counsel was ineffective for failing to challenge an alleged <u>Brady</u> violation involving Detective Medina's failure to include in her report that, prior to identifying Petitioner as a suspect, she showed an initial photographic lineup to a witness which did not contain Petitioner's photograph. (Lodgment 1, at 243.) Petitioner raised this claim to the state courts in his writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

      The suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to the question of guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963). To prevail on a <u>Brady</u> claim, "[t]he evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." <u>Hovery v. Ayers</u>, 458 F.3d 892, 916 (9th Cir. 2006)(quoting <u>Banks v. Dretke</u>, 540 U.S. 668, 691 (2004)). "Evidence is material if there is a probability that, had it been disclosed to the defense, the outcome of the trial would have been different." <u>Belmontes v. Brown</u>, 414 F.3d 1094, 1113 (9th Cir. 2005). What is important is "whether, after discounting the inculpatory evidence in light of the undisclosed evidence, the remaining evidence is sufficient to support the jury's conclusions." <u>Strickler v. Greene</u>, 527 U.S. 263, 290 (1999).

      Here, Petitioner did not provide reasons as to why his trial counsel was ineffective for failing to bring a <u>Brady</u> claim regarding the photographic lineup. Detective Medina showed various witnesses two lineups during her investigation. (Lodgment 1, at 243.) The first lineup did not contain a picture of Petitioner, while the second lineup did. (<u>Id.</u>) The information on the first photographic lineup was available to Petitioner's counsel at least by the time of trial. (Lodgment 1, at 243-245.) Also, even had this purported impeachment evidence been presented at trial, Petitioner still would have been convicted

due to the several other witnesses at trial who testified that they witnessed Petitioner "punch," "stomp," and "urinate" on the victim. (Lodgment 2, at 125, 412, 413.) Therefore, the state court's decision that trial counsel was not ineffective for failing to object to potential <u>Brady</u> violations is reasonable. The Court finds that habeas relief is not available with respect to claim one, sub-claim c.

> d. <u>Sub-Claim d: Trial Counsel Failed to Retain a DNA Expert and Retest DNA Evidence.</u>

Petitioner claims that trial was counsel was ineffective for failing to retain an expert on DNA analysis and for not having the DNA re-analyzed by the defense's own expert. (Doc. 1, at 32.) Additionally, Petitioner contends that because the DNA evidence was a key part of the prosecution's case, defense counsel had a duty to retain expert witnesses to advise her on whether to re-analyze the DNA evidence. (<u>Id.</u>) As a result of his trial counsel's ineffective assistance in regards to the DNA evidence, Petitioner argues that his Sixth Amendment rights were violated. (<u>Id.</u>) Petitioner raised this claim to the state court in his petition for writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

Here, Petitioner failed to overcome the presumption that not retaining a DNA expert and not requesting the DNA to be re-analyzed was a strategic move. Mere speculation by a petitioner that an expert witness could have been found whose testimony would have supported the defense theory that someone else committed the assault is not enough to support an allegation of ineffective assistance of counsel. <u>See</u> <u>Gallegos v. Schriro</u>, 583 F. Supp. 2d 1041, 1068 (D. Ariz. 2008). Petitioner did not provide support as to how he was prejudiced by trial counsel's failure to retain a DNA expert and retest DNA evidence. Therefore, the state court's decision that trial counsel was not ineffective for failing to retain a DNA expert and failing to retest DNA evidence is reasonable. The Court finds that habeas relief is not available with respect to claim one, sub-claim d.

///

e. Sub-Claim e: Trial Counsel Essentially Admitted Petitioner's Guilt in Closing Arguments.

Petitioner argues that trial counsel's closing argument was deficient because she essentially declared Petitioner guilty. (Doc. 1, at 32.) Petitioner claims that his Sixth Amendment rights were violated as a result of trial counsel's comments during closing argument. (Id.) Petitioner raised this claim to the state courts in his writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

For the defense, closing argument is the last clear chance to persuade the trier of fact that there is reasonable doubt of the defendant's guilt. Herring v. New York, 422 U.S. 853, 862 (1975). During closing arguments, trial counsel must present arguments to the jury about the weaknesses in the prosecution's case and strengths in the defense that help the defendant's position. See Gentry v. Roe, 320 F.3d 891, 900-902 (9th Cir. 2003). To not do so is ineffective assistance of counsel. Id. At 902.

Here, Petitioner failed to establish that trial counsel improperly conceded his guilt during closing arguments. Petitioner, again, failed to provide factual support as to what trial counsel said that essentially argued for Petitioner's guilt. During closing arguments, trial counsel stated the following:

Mr. Curtis Harris is not guilty of these fabrications, accusations against him.

Jodi Tannehill, I feel bad for her . . . She doesn't really remember anything. She certainly doesn't say Mr. Harris hit me or punched me.

[I]f you recall, she was shown lineup pictures with his picture in it, and she didn't pick him out at that time.

Lashonna tries to paint herself as the heroine. "I went and pushed the male off—to Officer Hall. I went and physically pushed him." Now, she can't keep her facts straight, which is why the truth never changes. This showed it's a lie.

(Lodgment 2, at 1345:25-26 - 1349:3-6.)

CV-15-1794-GPC (PCL)

1    It is clear from the above  that counsel was arguing for Petitioner's innocence. All

2   of the arguments cast at least some doubt on the prosecutor's case. As Petitioner fails to

3   cite any particular portion of trial counsel's closing argument that he claims to be

4   improper or damaging to his case, the state court's decision that trial counsel was not

5   ineffective for the closing argument is reasonable. The Court finds that habeas relief is

6   not available with respect to claim one, sub-claim e.

7        2. Claim 2:  Prosecutor Committed a Pattern of Misconduct Which Violated

8   Petitioner's Due Process Rights.

9        Petitioner contends that the prosecutor improperly elicited hearsay testimony and

10  that he improperly shifted the burden of proof during closing argument. (Doc. 1, at 47-

11  55.) This, Petitioner argues, violated Petitioner's due process rights under the United

12  States Constitution. (Doc. 1, at 47.) Petitioner complains that the prosecutor told the jury

13  that Petitioner had assaulted and urinated on the victim without laying a proper

14  foundation. (Doc. 1, at 48.) Petitioner raised this claim to the state court in his petition for

15  writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8,

16  at 39-46; Lodgment 9.)

17       In order to establish prosecutorial misconduct, a prosecutor's comments must have

18  "so infected the trial with unfairness as to make the resulting conviction a denial of due

19  process." Darden v. Wainwright, 477 U.S. 168, 181 (1986). It "is not enough that the

20  prosecutor's remarks were undesirable or even universally condemned." Darden v.

21  Wainwright, 699 F.2d 1031, 1036 (11th Cir. 1983). Prosecutorial misconduct violates due

22  process only if the evidence presented, taken as a whole, gives a jury a "'false

23  impression.'" Downs v. Hoyt, 232 F.3d 1031, 1038 (9th Cir. 2000)(citation omitted).

24       a. Sub-Claim a: The Prosecutor Improperly Elicited Inadmissible Hearsay

25          Evidence

26       Petitioner claims that the prosecutor committed misconduct when he elicited

27  inadmissible hearsay testimony in violation of the Confrontation Clause of the Sixth

28  Amendment. (Doc. 1, at 49-50.) The Confrontation Clause of the Sixth Amendment

provides that the accused has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI.  The Confrontation Clause is designed to require the use of live testimony and cross examination questioning at trial to increase "the accuracy of factfinding by reducing the risk that a witness will wrongfully implicate an innocent person." Maryland v. Craig, 497 U.S. 836, 846 (1990).

Petitioner states that the prosecution put on numerous witnesses who claimed that they witnessed Petitioner assault and urinate on the victim. (Doc. 1, at 49.) Petitioner characterized this evidence as inadmissible hearsay. (Id.) However, because the statements were made by witnesses who testified at trial, the evidence is not hearsay and is admissible according to Federal Rule of Evidence §801(c). Even further, the testimony provided by the witness who claimed that they witnessed Petitioner assault and urinate on the victim does not otherwise violate the Sixth Amendment, as defense counsel had the opportunity to cross-examine the witnesses and their testimony. As there was no prosecutorial misconduct for eliciting this testimony, the state court was reasonable in its rejection of this claim. The Court finds that habeas relief is not available with respect to claim two, sub-claim a.

b. Sub-Claim b: The Prosecutor Shifted the Burden of Proof During Closing Argument.

Petitioner argues that the prosecutor shifted the burden of proof during closing arguments which violated his right to due process. (Doc. 1, at 53, 55.)

Prosecutors have considerable leeway to strike "'hard blows'" based on the evidence and all reasonable inferences from the evidence during closing arguments. United States v. Tucker, 641 F.3d 1110, 1120 (9th Cir. 2011)(quoting United States v. Henderson, 241 F.3d 638, 652 (9th Cir. 2000)).  Comments intended to highlight the weaknesses of a defendant's case do not shift the burden of proof to the defendant during closing arguments "where the prosecutor does not argue that a failure to explain them adequately requires a guilty verdict." United States v. Vaandering, 50 F.3d 696, 701-02 (9th Cir. 1995). In order to determine whether comments made during closing arguments

resulted in prosecutorial misconduct, federal courts in habeas cases must review prosecutor's conduct to determine whether that conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." <u>Hall v. Whitley</u>, 935 F.2d 165, 165 (9th Cir. 1991) (quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).

Petitioner objects to the following closing arguments because they resulted in a denial of his due process rights:

> The bitch deserved it, she shouldn't have been talking shit." You have a lot of evidence talking about what Curtis Harris did about a lot of people who saw what he did . . . What did he do? He knocked out Jodi Tannehill. He dragged her into the kitchen. He poured his drink on her. He stepped on her chest, causing a bruise as she lay on her back, eyes fluttering, flopping like a fish, he pulled down his pants and he urinated on her, a full urination.
>
> Then what did he do? He called her a bitch a couple more times, punched her in the face as she lay unconscious, knocked out cold, and walked away. "The bitch deserved it." And why? Why did he do that? Because she was talking shit. She was disrespecting Curtis Harris.
>
> Now let's think about Mr. Harris. He's a 32-year-old at a party with a bunch of teenagers. These people were 18, 19, 20. People that couldn't buy booze. But he's the big man, the big 32-year-old hanging out with people 10, 12 years younger than him. He's the respected one. He's the hard one at this party.
>
> He gets to the party, they can't buy booze, so he takes Larry and Brandy, who is throwing the party, to go get some booze because he is the big guy. They go to the store, they get booze, they come back. Now we have a bunch of 18, 19, 20-year-olds drinking beer because of Mr. Harris. We don't know where the weed came from, but we know where the booze came from.
>
> Ms. Von Helms has done a great job in this case because there aren't witnesses for Mr. Harris. There aren't facts for Mr. Harris. It is clear as day. We have got DNA evidence proving that he was a contributor to the sweatshirt. There is no facts, good facts for them to argue.
>
> (Doc. 1, at 52-53.)

14

Despite the graphic picture painted by the prosecutor during closing arguments, the language does not rise to the level of prosecutorial misconduct that would violate due process. The prosecutor highlighted the weakness of Defendant's case when he said: "There aren't facts for Mr. Harris. It is clear as day." (Doc. 1 at 52-53.) This verbiage does not shift the burden of proof to Petitioner as the prosecutor did not argue that lack of witnesses or facts for Petitioner's case required a guilty verdict. Also, the colorful language used by the prosecutor during closing arguments did not "so infect the trial with unfairness as to make the resulting conviction a denial of due process," <u>Darden</u>, 477 U.S. at 181, but was merely used in order to persuade, and not require, the jury to convict Petitioner. Because Petitioner failed to establish that the prosecutor shifted the burden of proof during closing arguments, the state court's decision that the prosecutor's conduct was proper is reasonable. The Court finds that habeas relief is not available with respect to claim one, sub-claim b.

　　3. <u>Claim 3: Trial Court Improperly Denied Petitioner's Motion to Suppress Evidence under Cal. Penal Code § 1538.5, Thereby Requiring a Reversal of Petitioner's Conviction.</u>

Petitioner contends that the following evidence should have been suppressed by the trial court in accordance with California Penal Code §1538.5: 1) identification testimony, 2) the victim's sweatshirt, and 3) DNA testimony. (Doc. 1, at 55.) Due to an improper denial of his Motion to Suppress Evidence, Petitioner claims that his current conviction should therefore be reversed. (<u>Id.</u>) Petitioner raised this claim to the state court in his petition for writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8, at 39-46; Lodgment 9.)

The Fourth Amendment of the United States Constitution protects "the right of the people to be secure in their houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend IV. The rule used to exclude illegally obtained evidence from being used in court was created in order compel respect for this constitutional guaranty by removing the incentive to disregard it. <u>Elkins v. United States</u>, 364 U.S. 206,

CV-15-1794-GPC (PCL)

217 (1960). However, the constitutional protections accorded to criminal defendants under the exclusionary rule are not absolute. Stone v Powell, 428 U.S. 465, 488 (1976). Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at trial. Id. at 494. A court should consider whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided, when determining whether to grant habeas corpus relief on a Fourth Amendment claim. Ortiz-Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

California provides such an opportunity to fully and fairly litigate a Fourth Amendment claim through a motion to suppress evidence filed pursuant to California Penal Code §1538.5. See Gordon v. Duran, 895 F.2d 610, 613-14 (9th Cir. 1990) (finding Cal. Penal Code §1538.5 provided the full and fair opportunity required under Stone). "The relevant inquiry is whether petitioner had the opportunity to litigate his claim, not whether he did in fact do so or even whether the claim was correctly decided." Ortiz, 81 F.3d at 899. Consequently, as Petitioner's counsel could have, and in fact did try to suppress the evidence in question, the state court was reasonable in denying Petitioner's Fourth Amendment claim.

### 4. Claim 4: Trial Court Erred by Denying Petitioner's Sixth Amendment Right to Obtain Counsel of His Choice

Petitioner maintains that the trial court denied him his Sixth Amendment right to obtain the counsel of his choice when the trial court improperly applied the standard for substitution of counsel articulated in People v. Marsden, 2 Cal. 3d 118 (1970). (Doc. 1, at 58.) Petitioner presented this claim to the state court which was denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. If a defendant cannot afford to have the counsel of his choice, then he has a

constitutional right to have counsel appointed for him or to represent himself. Faretta v. California, 422 U.S. 806, 807 (1975). When a petitioner claims a trial court erred in denying a motion for substitution of counsel, violating his constitutional rights, a court must consider whether the conflict between the petitioner and his appointed counsel had become so great that it resulted in a "total lack of communication or other significant impediment that resulted [] in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000). However, the Sixth Amendment does not guarantee that trial counsel and the accused have a meaningful relationship, but rather that counsel "function[s] in the active role of an advocate." Entsminger v. Iowa, 386 U.S. 748, 751 (1967).

During court proceedings on April 1, 2011, Petitioner asked his trial counsel, Guadalupe Valencia, to inform the court that he did not want Mr. Valencia to be his counsel. (Lodgment 2, at 1290.) On April 6, 2011 the court asked Petitioner, "[I]s it correct that you are no longer seeking different counsel . . .  [A]m I correct that you are no longer asking the court to change your attorney?" (Lodgment 2, at 1304:11-17.) Petitioner replied, "Yes." (Lodgment 2, at 1304:18.) Petitioner abandoned his request to change attorneys, showing that there must have been some communication between him and his trial counsel and that Petitioner was at least somewhat satisfied with trial counsel. Also during court proceedings on April 1, 2011, trial counsel stated that he discussed with Petitioner whether or not he wished to testify at trial and that Petitioner requested that he call various alibi witnesses. (Lodgment 2, at 1286-87.) Trial counsel then asked the court for a continuance so that he could interview the witnesses, further demonstrating an open line of communication between Petitioner and his trial counsel. (Id.) Not only did Petitioner abandon his Marsden motion to replace his attorney, Petitioner did not exhibit  a "total lack of communication or other significant impediment" between himself and his trial counsel. Schell, 218 F.3d at 1026. Thus, the state court was not unreasonable for ruling that the trial court did not deny Petitioner's

Sixth Amendment right to obtain counsel of his choice. The court finds that habeas relief is not available with respect to claim four.

     5. <u>Claim 5: Petitioner's Constitutional Rights were Violated when Trial Court Improperly Answered a Jury Question and Petitioner's Trial Counsel  was Ineffective for Failing to Challenge the Trial Court's Answer.</u>

Petitioner argues that his constitutional rights were violated when the trial judge responded to a jury note during jury deliberation. (Doc. 1, at 60-61.) The jury wrote the following note: "Clearer definition of 'battery causing serious bodily injury.' Does that include emotional suffering, such as inability to perform job duties due to the emotional trauma caused by injury?" (Lodgment 1, at 122.) The trial judge responded, "[t]he definition of 'serious bodily injury' is contained in Instruction 925, the final paragraph." (Lodgment 1, at 123.) The final paragraph of the instructions as given to the jury read: "[A] serious bodily injury means a serious impairment of physical condition. Such an injury may include, but is not limited to: loss of consciousness/concussion/bone fracture/protracted loss or impairment of function of any bodily member or organ[.]" (Lodgment 1, at 108.) Petitioner argues that his trial counsel was ineffective for failing to challenge the trial court's response to the jury note. (Doc. 1, at 59-63.)  Petitioner presented this claim on direct appeal and it was summarily denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

While it is true that a trial court should clarify the jury's difficulties in understanding the jury instructions with concrete accuracy, the precise manner by which the court fulfills this obligation is left to the trial judge's discretion. <u>See</u> <u>Arizona v. Johnson</u>, 351 F.3d 988, 994 (9th Cir. 2003). In order to prevail on a claim that a trial court improperly answered a jury question, a petitioner must demonstrate that the court's error so infected the entire trial that the resulting conviction violates the petitioner's due process rights.  <u>See</u> <u>Beardslee v. Woodford</u>, 358 F.3d 560, 573-74 (9th Cir. 2003). Additionally, the petitioner must show that the jury relied on the faulty instruction to convict. <u>Ficklin v. Hatcher</u>, 177 F.3d 1147, 1149-51 (9th Cir. 1999).

Petitioner failed to establish that the trial judge improperly responded to the jury note. Petitioner did not describe how the trial court improperly answered the jury note and did not provide any support that the jury applied California Criminal Jury Instruction 925 in a way that violated the Constitution. Moreover, the trial court did not make an error in its response that so infected the entire trial that Petitioner's resulting conviction was a denial of due process. The trial judge responded to the jury note appropriately when he simply responded, "[t]he definition of 'serious bodily injury' is contained in Instruction 925, final paragraph. (Lodgment 1, at 108.)

Additionally, trial counsel was not ineffective for failing to challenge the trial court's answer to the jury question. Petitioner stated in his petition that, "[t]rial counsel has a duty to ensure that the jury has a proper understanding of the law." (Doc. 1, at 59:19-20). The trial court responded to the jury note by having the jury refer back to the law. Trial counsel's objection to this response would have been properly overruled. The Court finds that habeas relief is not available with respect to claim five.

6. Claim 6: Trial Court Erred in Denying Petitioner's Motion for New Trial in Violation of Petitioner's Due Process Rights.

Petitioner contends that the trial court erred in denying his Motion for New Trial pursuant to Cal. Penal Code §1181(5), (6) and (7). (Doc. 1, at 63.)  A new trial should have been granted, Petitioner claims, because the facts provided at trial did not support a finding that Petitioner carried out the accused act of criminal assault. (Doc. 1, at 65.) As a result of the trial court's error, Petitioner claims that his due process rights were violated. (Doc. 1, at 66.) Petitioner presented this claim to the state courts which was summarily denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 364 (1970). A petitioner is entitled to habeas corpus relief when "it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt

beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979). Once a state court fact finder has found a defendant guilty, federal habeas courts must consider the evidence "in the light most favorable to the prosecution." <u>Jackson</u>, 443 U.S. at 319. In making this determination, federal habeas courts must respect the province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts by assuming the jury resolved all conflicts in a manner that supports the verdict. <u>Id.</u> "Although it might have been possible to draw a different inference from the evidence, [a federal habeas court is] required to resolve that conflict in favor of the prosecution." <u>Ngo v. Giurbino</u>, 651 F.3d 1112, 1115 (9th Cir. 2011). Federal habeas courts also must analyze <u>Jackson</u> claims "with explicit reference to the substantive elements of the criminal offense as defined by state law." <u>Chein v. Shumsky</u>, 373 F.3d 978, 983 (9th Cir. 2004) (en banc) (quoting <u>Jackson</u>, 443 U.S. at 324 n.16). Finally, "[a]n additional layer of deference is added to this standard by 28 U.S.C. § 2254(d), which requires [a petitioner] to demonstrate that the state court's adjudication entailed an unreasonable application of the quoted <u>Jackson</u> standard." <u>Briceno v. Scribner</u>, 555 F.3d 1069, 1078 (9th Cir. 2009).

Viewing the evidence "in light most favorable to the prosecution," this Court finds that sufficient evidence was adduced at trial to support the assault charge. <u>Jackson</u>, 443 U.S. at 319.  In order to sustain an allegation of assault by means likely to produce great bodily injury under Cal. Penal Code § 245(a)(1), the prosecution must prove that Petitioner committed an assault upon Jodi Tannehill with a deadly weapon or instrument other than a firearm. Cal. Pen. Code §245(a)(1).  Eye witness Lashonna Williams testified at trial that she saw Petitioner speaking to the victim and witnessed an altercation take place between Petitioner and the victim. (Lodgment 2, at 121,124.)  "He punched her. He punched her, and I guess she, like, stumbled right there in the kitchen or he [dragged] her in the kitchen, but I'm pretty sure they were fighting, and she just got knocked out cold." (Lodgment 2, at 125:5-8.) Lashonna Williams also testified to having seen Petitioner punch the victim in the face. (Lodgment 2, at 125.) Next, Lashonna

Williams saw the victim fall to the floor and Petitioner unzip his pants, pull out his penis, and urinate on the victim. (Id.) Brandy Williams testified that she also saw Petitioner and the victim speak to each other the night in question: "What happened next? I went to the garage to get her daughter once again. When I came back in this time, Jodi was on the floor, and Mr. Harris was peeing on Jodi." (Lodgment 2, at 412: 4-6.) Brandy Williams then testified that the victim's eyes were rolling back into her head while she lay on the floor and that she was nonresponsive. (Lodgment 2, at 413.)

The testimony given at trial was more than sufficient to support the allegation of assault by means likely to produce great bodily injury. The trial court did not violate Petitioner's due process rights because it reasonably denied Petitioner's motion for a new trial under California Penal Code §1181(5), (6) and (7) based on the evidence. This Court finds that habeas relief is not available with respect to claim six.

### 7. Claim 7: Petitioner's Appellate Counsel Rendered Ineffective Assistance of Counsel for Failing to Raise Issues on Appeal.

Petitioner claims that his appellate counsel was ineffective for failing to raise on appeal the issues he now presents in his habeas corpus petition. (Doc. 1, at 67-71.)  Had appointed appellate counsel raised these issues on appeal, Petitioner contends, the appellate court would have overturned his current conviction. (Doc. 1, at 70.) Additionally, Petitioner claims that appellate counsel's errors were so great that it lead to an appeal that was fundamentally unfair. (Id.) Petitioner presented this claim to the state courts in his petition for writ of habeas corpus which was denied by the California Supreme Court. (Lodgment 8; Lodgment 9.)

Appellate counsels are to support their clients' appeals to the best of their abilities. Anders v. California, 386 U.S. 738, 744 (1967). However, nothing in the Constitution suggests that an appellate counsel has a duty to raise every "colorable" claim suggested by a client, but rather may select from among the issues at hand in order to maximize the likelihood of success on appeal. Jones v. Barnes, 463 U.S. 745, 754 (1983). A petitioner must show that appellate counsel was ineffective using the Strickland v. Washington two

prong test. <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). First, it must be shown that appellate counsel was objectively unreasonable in failing to discover nonfrivolous issues and raise them on appeal. <u>Id.</u> Second, a petitioner must demonstrate that a reasonable probability exists that, but for the counsel's unreasonable failure to raise issues, the petitioner would have succeeded on appeal. <u>Id.</u> at 286.

Appellate counsel raised three issues on appeal: 1) trial counsel provided ineffective assistance by failing to object to the court's response to the jury's question of whether psychological harm could constitute serious bodily injury, thereby violating appellant's Sixth Amendment right to counsel; 2) trial court violated its instructional duty and appellant's due process rights by failing to provide a proper response to the jury question regarding whether psychological harm could constitute serious bodily injury; and 3) that the abstract of judgment must be modified to reduce the 1202.4(B) fine from $33,660 to $3,360. (Lodgment 5.) The fact that appellate counsel only raised these three issues on appeal is acceptable under <u>Jones</u> because these are the claims that the appellate counsel felt would lead to success on appeal. And Petitioner, in fact, did succeed on issue three as the restitution fine was reduced to $3,360. (Lodgment 5, at 6.) However, Petitioner failed to establish that raising the other issues that he currently raises in his petition in this court would have resulted in a successful appeal in state court. Therefore, the state court was not unreasonable in ruling that appellate counsel did not render ineffective assistance. The Court finds that habeas relief is not available with respect to claim seven.

## V.    CONCLUSION AND RECOMMENDATION

The Court submits this Report and Recommendation to United States District Judge Curiel under 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.  For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

CV-15-1794-GPC (PCL)

1    **IT IS HEREBY ORDERED** that any party to this action may file written

2    objections with the Court and serve a copy on all parties no later than September 5, 2016.

3    The document should be captioned "Objections to Report and Recommendation."

4    **IT IS FURTHER ORDERED** that any Reply to the Objections shall be filed with

5    the Court and served on all parties no later than September 15, 2016.  The parties are

6    advised that failure to file objections within the specified time may waive the right to

7    raise those objections on appeal of the Court's Order.  *See Turner v. Duncan*, 158 F.3d

8    449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

9    DATE: August 15, 2016

10

11    Peter C. Lewis

12    U.S. Magistrate Judge
     United States District Court

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CV-15-1794-GPC (PCL)